UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Aftokinito Properties, Inc.
and Stephan Condodemetraky

      v.                     Civil No. 09-cv-415-JD
                               Opinion No. 2010 DNH 091

Millbrook Ventures, LLC,
Pedro Torres, and Stephen Garofalo

O R D E R

Aftokinito Properties, Inc. ("API") and Stephan
Condodemetraky sued Millbrook Ventures, LLC ("Millbrook"), Pedro
Torres, and Stephen Garofalo in Rockingham County Superior Court,
bringing claims for an accounting, breach of contract, unjust
enrichment, promissory estoppel, negligent or fraudulent
misrepresentation, intentional interference with contractual
relations, unfair and deceptive business practices, and wages.
The defendants removed the action to this court pursuant to 28
U.S.C. §§ 1332, 1441, and 1446, invoking this court's diversity
jurisdiction.  The individual defendants move for dismissal on
the ground that this court lacks personal jurisdiction over them.

Background

Except where noted, the following facts are gleaned from the plaintiffs' state court complaint[1] and objection to the motion to dismiss for lack of personal jurisdiction.  API and Condodemetraky allege that on March 26, 2009, API and Millbrook entered into an agreement that API would be Millbrook's exclusive marketing and sales agent for Silo Ridge, a golf course, spa, and resort community under development in Amenia, New York.  For its services, API would be paid $125,000 on signing, $30,000 per month thereafter, a $125,000 bonus after six months, and

---

[1]Although entitled "Verified Petition for an Accounting and Other Relief, Including Damages," the complaint is only certified to be to the best of Condodemetraky's "knowledge, information, and belief," and the oath similarly states that the statements are accurate to the best of Condodemetraky's "knowledge and belief."  "A verified complaint may be treated as an affidavit only to the extent that it comports with the requirements of [Federal] Rule [of Civil Procedure] 56(e). . . . It is apodictic that an affidavit made upon information and belief does not comply with Rule 56(e)."  Sheinkopf v. Stone, 927 F.2d 1259, 1271 (1st Cir. 1991) (internal quotation marks and ellipses omitted). Condodemetraky's affidavit in support of the plaintiffs' objection to the motion to dismiss presents the same problem. Because the defendants did not challenge the use of the verified complaint or the Condodemetraky Affidavit as evidence, however, the statements that appear to be based on Condodemetraky's personal knowledge are considered as sworn testimony for purposes of this motion only.  Cf. Perez v. Volvo Car Corp., 247 F.3d 303, 315 (1st Cir. 2001) (stating, in summary judgment context, that trial court must be conspicuously and timely apprised of objection regarding deficient affidavit and ostensible defects or else the objection is waived).

commissions for sales beyond $35 million.[2]  According to the
complaint, the exclusivity was mutual: the plaintiffs stopped
working for current clients and stopped soliciting any other
business.  Condodemetraky, API's president, became a full-time
employee of Millbrook, and API assigned its rights under the
contract to Condodemetraky.

The plaintiffs claim that the parties performed under the
contract for approximately six months but, in early October,
2009, the defendants said their services would no longer be
needed as of October 31, 2009.  According to the plaintiffs, this
conversation occurred over the phone.  Each of the plaintiffs'
claims relates to this alleged breach of contract.[3]

API is incorporated in New Hampshire with its principal
place of business in Derry, New Hampshire.  Condodemetraky's
primary residence is also in Derry.  Millbrook is a New York

---

[2]The agreement, entitled "Proposal for Millbrook Ventures
LLC," was signed by Torres on behalf of Millbrook and by
Condodemetraky on behalf of API.  Compl., Exh. 1.

[3]The defendants' interpretation of events differs.
According to their motion to dismiss, the "proposal" was
terminated in April, after they discovered that the plaintiffs
were not properly licensed securities brokers – a necessary
prerequisite to performance under the "proposal".  The defendants
agree that Condodemetraky became a full-time Millbrook employee,
but allege that the October conference call terminated only his
employment, not the "proposal," which had been abandoned months
earlier.

company with its principal place of business in Amenia, New York, and a second office in Florida.  Garofalo, the chief executive officer of Millbrook, and Torres, the president and chief operating officer, are both residents of Florida.[4]

Neither Torres nor Garofalo has ever lived in New Hampshire or owned property, including banking or brokerage accounts, in the state.  The only time either defendant entered the state was when Torres vacationed in New Hampshire for one week in 2000.

In support of personal jurisdiction, the plaintiffs state that Millbrook has, on a regular basis, purposefully engaged in commercial dealings with API and Condodemetraky.  They allege that Torres sought API's services and engaged in "extensive" telephone and email communications with API during 2008 and the beginning of 2009, which culminated in the signed agreement. According to the plaintiffs, Torres and Garofalo knew that API is a New Hampshire entity, that Condodemetraky is a New Hampshire resident, and that the plaintiffs' work would be done primarily in New Hampshire.  Additionally, Condodemetraky became an employee of Millbrook, earning $30,000 a month until October, 2009.

---

[4]The complaint states that Garofalo and Torres have business addresses in Amenia, New York, but does not say where they reside.  The defendants provide that information in their motion.

4

From March to October, 2009, the plaintiffs allege that Condodemetraky worked primarily from New Hampshire and had almost daily email and telephone communications with Torres, as well as frequent conference calls with both Torres and Garofalo and emails from both.

In July, 2009, Garofalo, through a company called First Global Technology Corporation, leased a Ferrari for Condodemetraky to use in connection with his work for Millbrook. Garofalo signed the lease, and Condodemetraky guaranteed it. Garofalo apparently also asked Condodemetraky to register the car under his name and home address in Derry.

## Standard of Review

"To hear a case, a court must have personal jurisdiction over the parties, that is, the power to require the parties to obey its decrees." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002) (quotation marks omitted).  "The plaintiff bears the burden of proving the court's personal jurisdiction over a defendant." Hannon v. Beard, 524 F.3d 275, 279 (1st Cir. 2008) (quotation marks omitted).  When the motion to dismiss is decided without an evidentiary hearing, "the plaintiff must make a prima facie showing that the court has personal jurisdiction over the defendant." Levesque v. Fletcher

<u>Allen Health Care</u>, No. 09-cv-55-SM, 2009 WL 4547744, at *1
(D.N.H. Nov. 30, 2009) (citing <u>United Elec. Radio & Mach. Workers
of Am. v. 163 Pleasant St. Corp.</u>, 987 F.2d 39, 43 (1st Cir.
1993)).  The court must "accept the plaintiff's (properly
documented) evidentiary proffers as true, and construe those
facts in the light most congenial to the plaintiff's
jurisdictional claim." <u>Hannon</u>, 524 F.3d at 279 (internal
quotation marks omitted).  The court also considers any
uncontradicted facts adduced by the defendants.  <u>Mass. Sch. of
Law at Andover, Inc. v. Am. Bar Ass'n</u>, 142 F.3d 26, 34 (1st Cir.
1998).

<u>Discussion</u>

    "An exercise of jurisdiction must be authorized by state
statute and must comply with the Constitution." <u>Harlow v.
Children's Hosp.</u>, 432 F.3d 50, 57 (1st Cir. 2005).  New
Hampshire's long-arm statute permits a court to exercise
jurisdiction to the same extent as the Constitution, so the only
inquiry that remains is what the Constitution permits.  <u>Phillips
Exeter Acad. v. Howard Phillips Fund</u>, 196 F.3d 284, 287 (1st Cir.
1999).

    Although a court's jurisdiction over a person may be either
general or specific, the plaintiffs do not argue that general

6

jurisdiction exists here.  Specific jurisdiction "may only be relied upon where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." <u>Cossaboon v. Maine Med. Ctr.</u>, --- F.3d ----, 2010 WL 1078342, at *3 (1st Cir. Mar. 25, 2010) (internal quotation marks and citation omitted). "Due process requires . . . the existence of 'minimum contacts' between the nonresident defendant and the forum." <u>Negrón-Torres v. Verizon Communic'ns, Inc.</u>, 478 F.3d 19, 24 (1st Cir. 2007). The contacts must be sufficient "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." <u>Id.</u> (quoting <u>Int'l Shoe Co. v. Wash., Off. of Unemployment</u>, 326 U.S. 310, 316 (1945)).

The First Circuit "divides the constitutional analysis into three categories: relatedness, purposeful availment, and reasonableness." <u>Platten v. HG Bermuda Exempted Ltd.</u>, 437 F.3d 118, 135 (1st Cir. 2006) (internal quotation marks omitted).  The court "must ask whether the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with the forum [and] whether those contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws." <u>Phillips Exeter Acad.</u>, 196 F.3d at 288.  "[I]f the proponent's case clears the first two hurdles, the court then must analyze the overall reasonableness of an exercise of

jurisdiction in light of a variety of pertinent factors that touch upon the fundamental fairness of an exercise of jurisdiction." Id. The defendants' relevant contacts with New Hampshire must fulfill all three prongs before the court will exercise personal jurisdiction. Id.

The jurisdictional inquiry is different for different types of claims. Id. at 289 (approving "lower court's decision to analyze the contract and tort claims discretely"). Here, the plaintiffs have brought eight claims, of which seven name the individual defendants. Of the seven, some are contract-based and others are tort-based.

A.    Contract-Based Claims

1.    Relatedness

For contract-based claims, the court "must look to the elements of the cause of action and ask whether the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach." Id. Here, the relatedness prong is met. Condodemetraky states in his affidavit that the defendants terminated their business relationship with the plaintiffs during a conference call in October, and that Condodemetraky was in New Hampshire during that call. Under the

plaintiffs' theory of the case, the defendants contacted an employee in New Hampshire in order to terminate the contract.

The October conference call was instrumental in the breach. The plaintiffs have therefore made a prima facie showing of relatedness.

     2.   <u>Purposeful Availment</u>

The purposeful availment prong is met "where the contacts proximately result from actions by the defendant[s] [themselves] that create a substantial connection with the forum State." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985) (internal quotation marks and citations omitted).  "[W]here the defendant[s] deliberately ha[ve] engaged in significant activities within a State . . . or ha[ve] created continuing obligations between [themselves] and residents of the forum, . . . [they] manifestly ha[ve] availed [themselves] of the privilege of conducting business there."  <u>Id.</u> at 475-76 (internal quotation marks and citations omitted).

The court does not have jurisdiction merely because an out-of-state defendant entered into a contractual relationship with an in-state plaintiff.  <u>Phillips Exeter Acad.</u>, 196 F.3d at 288. Instead, "'prior negotiations and contemplated future consequences, along with the terms of the contract and the

parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.'"  Id. at 290 (quoting Burger King, 471 U.S. at 479).  "The defendant[s'] contacts with the forum state must be voluntary – that is, not based on the unilateral actions of another party."  Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 716 (1st Cir. 1996).  "In addition, the defendant[s'] contacts with the forum state must be such that he should reasonably anticipate being haled into court there."  Id.

     The plaintiffs allege that the defendants knew they contracted with and hired a New Hampshire resident and a New Hampshire corporation, a fact supported by several pieces of evidence.  The first paragraph of the "Proposal for Millbrook Ventures," signed by Torres, states that the proposal was "developed by [API], a New Hampshire corporation, having its principal place of business at 13 Berge Lane, Derry, New Hampshire."  Obj. to Mot. to Dismiss, Exh. B.  Condodemetraky's Federal Withholding Allowance Certificate ("Form W-4") submitted to Millbrook lists the same address as his home.  Mot. to Dismiss, Exh. B.  Condodemetraky's pay stub from Millbrook also lists the same address.  Obj., Exh. C.

Moreover, Torres and Condodemetraky negotiated some terms of the contract through email, during which Condodemetraky asked Torres to sign the contract and fax it to Condodemetraky "at (603) 434-8755," a New Hampshire number.  Obj., Exh. A. Similarly, Condodemetraky's emails, sent to both Torres and Garofalo, contain two numbers with 603 area codes.  Id., Exhs. D, E.  The same 603 numbers are listed as Condodemetraky's numbers not only before the contract was signed (see Obj., Exh. A), but also after, when his email address and signature reflect that he was an employee of Millbrook.  See id., Exh. D.  Condodemetraky alleges, and the defendants do not deny, that they understood that he would perform at least part of his work for Millbrook in his New Hampshire office.

One further piece of evidence supports the purposeful availment prong.  Looking to the parties' actions under the alleged contract, Garofalo leased a car for Condodemetraky to use as a Millbrook employee and then asked Condodemetraky to register it in New Hampshire.  See Obj., Exh. F.  Condodemetraky registered it as requested.  See Obj. to Mot. to Dismiss, Exh. G. Thus, Garofalo purposefully availed himself of the benefits and protections of New Hampshire law with respect to motor vehicle registration.

11

Torres and Garofalo intentionally carried on a business relationship with the plaintiffs that was intended to be financially beneficial to the defendants.  Their contacts with the plaintiffs were voluntary, and their deliberate commercial activities in New Hampshire made it reasonably foreseeable that they would be subject to suit in the state.  In addition to the formation of an alleged contract with a New Hampshire resident and corporation and the employment of the resident, the parties' course of dealing also shows repeated purposeful availment of the benefits and protections of New Hampshire's laws.  The plaintiffs have made a prima facie showing that the second prong of the specific personal jurisdiction test is satisfied.

### 3.   Reasonableness

The reasonableness prong is comprised of five "gestalt factors":

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 209 (1st Cir. 1994) (citing Burger King, 471 U.S. at 477).  This prong "evokes a sliding scale: the weaker the plaintiff's showing on the first

two prongs . . ., the less a defendant need show in terms of
unreasonableness to defeat jurisdiction." Id. at 210.

### a.   Defendants' Burden

The burden imposed on the defendants by litigating in New
Hampshire is not significant.  Although they reside in Florida,
they maintain offices in New York and are developing a property
in Amenia, New York, approximately 200 miles from this court.[5]
"[I]nsofar as staging a defense in a foreign jurisdiction is
almost always inconvenient and/or costly, . . . this factor is
only meaningful where a party can demonstrate some kind of
special or unusual burden." N. Laminate Sales, Inc. v. Davis,
403 F.3d 14, 26 (1st Cir. 2005) (internal quotation marks and
citation omitted); see also Pritzker v. Yari, 42 F.3d 53, 64 (1st
Cir. 1994) (upholding Puerto Rico court's exercise of personal
jurisdiction over defendants from New York, and noting that,
"[i]n the modern era, the need to travel between New York and
Puerto Rico creates no especially ponderous burden for business
travelers").

---

[5]Moreover, they argue that the case should proceed in New
York, not Florida, which implies that they would not find it
burdensome to appear in New York.

b.  New Hampshire's Interest

The dispute arises from the alleged breach of a contract involving a New Hampshire corporation, as well as the employment of a New Hampshire resident. See Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 12 (1st Cir. 2002) ("New Hampshire has a legitimate and constitutional interest in regulating commercial transactions that are performed within its borders, as well as in enforcing the contracts entered by its businesses and in protecting those businesses.")  New Hampshire has a clear interest in adjudicating this case, in which a New Hampshire resident and a New Hampshire corporation claim to have been injured.

The defendants argue that New Hampshire's interest in adjudicating this case is far outweighed by New York's interest in doing so, because New York law, not New Hampshire law, governs the plaintiffs' claims.  "[O]ur task," however, "is not to compare the interest of the two sovereigns . . . but to determine whether the forum state has an interest." Nowak, 94 F.3d at 718 (citing Sawtelle v. Farrell, 70 F.3d 1381, 1395 (1st Cir. 1995)). New Hampshire "has a strong interest in protecting its citizens . . . and it also has an interest in providing its citizens with a convenient forum in which to assert their claims." Nowak, 94 F.3d at 718.  Given New Hampshire's interest, it is not necessary

14

to determine at this time whether New York law governs any of the
claims at issue.

### c.  Plaintiffs' Interest

The plaintiffs have an obvious and demonstrated interest in
litigating in New Hampshire.  Condodemetraky is a New Hampshire
resident and API is a New Hampshire corporation, making New
Hampshire the most convenient forum for them.  Moreover, their
preference for New Hampshire is demonstrated by their filing suit
in a New Hampshire court and their statement of their preference
in the objection to the motion to dismiss.

### d.  The Judicial System's Interest

The defendants argue that the judicial system would prefer
the exercise of personal jurisdiction in New York because most of
the witnesses are in that state.  The plaintiffs counter that
there are only a small number of witnesses and documents involved
in the case, and that if the evidence is located in New York, it
is easily accessed in New Hampshire.  "Usually this factor is a
wash," and that is nearly the case in this instance.  Nowak, 94
F.3d at 718 (citing Ticketmaster, 26 F.3d at 211, and Sawtelle,
70 F.3d at 1395).  Although most of the witnesses are in New
York, there are apparently only a few of them, and there is

15

likely some evidence, including documents and witnesses, in New Hampshire.  Therefore it appears that the judicial system would be only slightly burdened by this case proceeding in New Hampshire.

### e.   The Common Interest of All Sovereigns

The final gestalt factor "addresses the interests of the affected governments in substantive social policies."  Nowak, 94 F.3d at 719.  This factor favors neither side.  Although the plaintiffs are correct that New Hampshire has an interest in "providing its citizens a forum to redress injuries," New York, and possibly Florida, also "surely ha[ve] an interest in providing a fair forum for [their] citizens [and corporations] faced with allegations of misconduct."  GT Solar Inc. v. Goi, No. 08-cv-249-JL, 2009 WL 3417587, at *12 (D.N.H. Oct. 16, 2009).

### 3.   Weighing the Gestalt Factors

The first and fourth gestalt factors weigh slightly in favor of the defendants.  On the other hand, the second factor is somewhat helpful to the plaintiffs, and the third factor weighs strongly in their favor.  The fifth factor does not favor either side.  Having considered all of these factors, the court

16

concludes that the exercise of personal jurisdiction in New
Hampshire is reasonable.

B.   Tort-Based Claims

     In addition to the contract-based claims, the plaintiffs
alleged several tort-based claims.  The personal jurisdiction
analysis for a tort-based claim is usually slightly different
from the analysis for a contract-based claim, but the court need
not undertake the analysis at this time.  "[A] district court has
discretion to exercise personal jurisdiction over a claim that it
ordinarily lacks personal jurisdiction over only when that claim
arises out of the same common nucleus of operative fact as does a
claim that is within the in personam jurisdiction power of the
court."  4A Charles Alan Wright & Arthur R. Miller, Federal
Practice and Procedure § 1069.7 (3d ed. 2010); see also GT Solar,
2009 WL 3417587, at *12; D'Jamoos v. Atlas Aircraft Ctr., Inc.,
669 F. Supp. 2d 167, 174 (D.N.H. 2009).

     Here, the tort claims arise from the same nucleus of fact as
the contract claims, namely, the circumstances surrounding the
beginning and end of the parties' business relationship and the
conduct and nature of that relationship.  In particular, all the
claims relate to the interpretation of the alleged contract at

17

issue.  Therefore, this court will exercise pendent personal jurisdiction over the plaintiffs' tort claims.

Conclusion

For the foregoing reasons, the defendants' motion to dismiss for lack of personal jurisdiction (doc. no. 17) is denied.


SO ORDERED.


_____
Joseph A. DiClerico, Jr.
United States District Judge

May 25, 2010

cc:  Philip R. Braley, Esquire
     Christopher M. Ferguson, Esquire
     Bryan K. Gould, Esquire
     Arnold Rosenblatt, Esquire