UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Aftokinito Properties, Inc.</u>
<u>and Stephan Condodemetraky</u>


       v.                       Civil No. 09-cv-415-JD
                                Opinion No. 2010 DNH 144

<u>Millbrook Ventures, LLC,</u>
<u>Pedro Torres, and Stephen Garofalo</u>


<u>O R D E R</u>


Aftokinito Properties, Inc. ("API") and Stephan
Condodemetraky sued Millbrook Ventures, LLC ("Millbrook"), Pedro
Torres, and Stephen Garofalo in Rockingham County Superior Court,
bringing claims relating to their failed business relationship.
The defendants removed the action to this court pursuant to 28
U.S.C. §§ 1332, 1441, and 1446, invoking the court's diversity
jurisdiction.  The defendants filed a motion to dismiss, under
Federal Rule of Civil Procedure 12(b)(6), counts III, IV, V, VI,
VII, and VIII in their entirety, as well as count I only against
Torres and Garofalo.  They also filed a motion for summary
judgment as to counts I and II.

A choice of law issue arose in the context of both motions.
The court ordered the parties to brief the choice of law issue
and terminated the pending motions without prejudice to file new
motions after the choice of law issue was resolved.  The

defendants move for a determination that New York law governs counts I through VI, and also argue that count II fails under 15 U.S.C. § 78cc(b).  The plaintiffs contend that New Hampshire law governs all eight counts.

## Background

The facts are taken from the plaintiffs' state court complaint, the defendants' motion, and the plaintiffs' objection.[1]  API is a New Hampshire corporation with its principal offices in Derry, New Hampshire.  Condodemetraky, whose primary residence is also in Derry, is the president of API.  Millbrook is a real estate development firm with offices in New York.  Garofalo is Millbrook's chief executive officer and Torres is its president and chief operating officer.

---

[1]Although some facts are disputed, the court relies only upon undisputed facts in deciding this motion.

As the court noted in its May 25, 2010, order denying the defendants' motion to dismiss for lack of personal jurisdiction, a certification that a party's statement is made to the best of his "knowledge, information, and belief," or "knowledge and belief" will be accepted as sworn testimony only for the pending motion and only if the opposing party does not object.  See doc. no. 30, n.1.  Despite this instruction, the plaintiffs continue to rely on two affidavits of Condodemetraky that were certified to be to the best of his knowledge and belief.  The defendants did not object.

API and Condodemetraky allege that on March 26, 2009, API and Millbrook entered into an agreement that API would be Millbrook's exclusive marketing and sales agent for Silo Ridge, a golf course, spa, and resort community under development in Amenia, New York.  A copy of the document, entitled "Proposal for Millbrook Ventures LLC," is attached to the complaint.  The Proposal provided that API would be paid $125,000 on signing, $30,000 per month thereafter, a $125,000 bonus after six months, and commissions for sales beyond $35 million.  According to the complaint, the exclusivity was mutual: the plaintiffs stopped working for current clients and stopped soliciting any other business.  The defendants required Condodemetraky to become a full-time employee of Millbrook, and the plaintiffs agreed to the arrangement, allegedly in reliance upon the defendants' statements and the terms of the Proposal.  API assigned its rights under the Proposal to Condodemetraky.

The plaintiffs claim that the parties performed under the Proposal from March 26, 2009, through October, 2009.  According to the complaint, the plaintiffs created marketing packages tailored to the interests and financial ability of prospective investors and hosted cocktail parties and "road shows" to attract investments in Silo Ridge.  The plaintiffs sought investors from their existing contacts and vetted the investors for Millbrook.

3

On October 5, 2009, Garofalo told the plaintiffs that Millbrook would no longer use their services as of October 31, 2009.  The plaintiffs were paid for six months of work, but not for the remaining six months envisioned in the Proposal.

The plaintiffs brought eight counts against the defendants. Count I seeks an accounting from all the defendants; count II, against Millbrook, is for breach of contract; counts III, IV, and V, against all the defendants, are for unjust enrichment, "promissory estoppel/detrimental reliance," and "negligent/fraudulent misrepresentation"; count VI, against Torres and Garofalo, is for intentional interference with contractual relations; and counts VII and VIII, against all the defendants, are for violations of New Hampshire RSA §§ 358-A (unfair and deceptive business practices) and 275:44 and related subsections (payment of wages).

<u>Discussion</u>

I.  <u>Section 78cc(b)</u>

The defendants contend that no choice of law is necessary, at least with respect to the plaintiffs' breach of contract claim, because, as they argued in their motion for summary judgment, to the extent the Proposal is construed to be a contract, it was void ab initio under 15 U.S.C. § 78cc(b).

Section 78cc(b), however, has been construed to mean that a
contract made in violation of the Securities and Exchange Act is
<u>voidable</u>, not void ab initio, at the option of the deceived
party.[2]  <u>See</u> <u>Blue Chip Stamps v. Manor Drug Stores</u>, 421 U.S. 723,
735 (1975); <u>Berckeley Inv. Group, Ltd. v. Colkitt</u>, 455 F.3d 195,
205 (3d Cir. 2006) (citing <u>Mills v. Elec. Auto-Lite Co.</u>, 396 U.S.
375, 387-88 (1970)); <u>SEC v. Lehman Bros., Inc.</u>, 157 F.3d 2, 8 n.6
(1st Cir. 1998).  To void an agreement under § 78cc(b), the
proponent must show that "(1) the contract involved a prohibited
transaction; (2) he is in contractual privity with [the party
relying on the contract]; and (3) [he] is in the class of persons
that the securities acts were designed to protect."  <u>Berckeley
Inv. Group</u>, 455 F.3d at 205.

   The defendants misunderstand the effect of § 78cc(b).
Because an agreement is voidable under § 78cc(b), rather than
void ab initio, the defendants bear the burden of demonstrating

---

[2]The case the defendants cite to support the proposition
that § 78cc(b) "render[s] void any contract 'made in violation'
of the Act," Defts.' Mot. for Sum. J. at 12, actually holds that
such a contract is voidable, not void ab initio.  <u>Regional
Props., Inc. v. Fin. & Real Estate Consulting Co.</u>, 678 F.2d 552,
559 (5th Cir. 1982) (holding that "a person can <u>avoid</u> a contract
under [§ 78cc(b)] if he can show that (1) the contract involved a
'prohibited transaction,' (2) he is in contractual privity with
the defendant, and (3) he is 'in the class of persons the Act was
designed to protect'") (emphasis added).

that the Proposal should be voided, based on the factors cited above.  The defendants did not address the governing standard for § 78cc(b) in their motion for summary judgment or in their current motion on choice of law.  Therefore, the defendants have not shown that they are entitled to relief based on § 78cc(b). They may raise § 78cc(b) in a renewed motion for summary judgment with appropriate legal and factual support.


II.  Choice of Law

The defendants argue that New York law should apply to claims I through VI, but apparently concede that counts VII and VIII, which are New Hampshire statutory claims, are governed by New Hampshire law.[3]  The plaintiffs contend that New Hampshire law governs all eight claims.  Both parties assert that there is a conflict between at least some of the applicable legal standards of the two states, and both apply the Restatement (Second) of Conflicts of Laws test to the accounting and breach

---

[3]In the complaint, the plaintiffs brought a claim under New Hampshire Revised Statutes Annotated ("RSA") § 358-A, which proscribes unfair methods of competition and commercial practices, and a claim under RSA 275:42, et seq., for Condodemetraky's unpaid wages.  The defendants do not argue that New York law should apply.  The court will apply New Hampshire law to resolve counts VII and VIII.

of contract claims, but apply New Hampshire's five-factor choice
of law test to counts III, IV, V, and VI.[4]

When the asserted claims do not arise under federal law, "a
federal court must apply the substantive law of the forum in
which it sits, including that state's conflict-of-laws
provisions." Dykes v. Depuy, Inc., 140 F.3d 31, 39 (1st Cir.
1998); see also Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S.
487, 496-97 (1941).  The first step in a choice-of-law analysis
is to determine whether an actual conflict exists between the
outcomes dictated by the substantive law of the interested
jurisdictions.  See A.M. Capen's Co. v. Am. Trading & Prod.
Corp., 202 F.3d 469, 472 n.6 (1st Cir. 2000) (explaining that,
where law of all three forums that might have an interest is
identical, there is no conflict of law); Royal Bus. Group, Inc.
v. Realist, Inc., 933 F.2d 1056, 1064 (1st Cir. 1991) ("It is
unnecessary that we make a formal choice of law since, whether
[either interested state's] law is used, the result will not
vary.")  "The party asserting application of the law of a foreign
state bears the burden of proving its content." SIG Arms Inc. v.
Employers Ins. of Wausau, 122 F. Supp. 2d 255, 259 (D.N.H. 2000)

_____

[4]The plaintiffs also argue that the court should look to the
five-factor test for counts I and II if the result under the
Restatement is inconclusive.

(citing <u>Petition of Breau</u>, 132 N.H. 351, 361 (1989)).  Where
there is no conflict, the court will apply the law of the forum
state which, in this case, is New Hampshire.  <u>Nordica S.p.A. v.
Icon Health & Fitness, Inc.</u>, No. 06-cv-451-PB, 2009 WL 2462570,
*3 n.1 (D.N.H. Aug. 11, 2009).

Where a conflict has been demonstrated, the court proceeds
to determine which state's law applies.  "Choice of law questions
. . . must be answered on an issue-by-issue basis." <u>Guardian
Angel Credit Union v. MetaBank</u>, No. 08-cv-261-PB, 2010 WL
1794713, at *5 (D.N.H. May 5, 2010) (citing <u>LaPlante v. Am. Honda
Motor Co.</u>, 27 F.3d 731, 741 (1st Cir. 1994)).  For contract
claims, New Hampshire courts apply the approach of the
Restatement (Second) of Conflict of Laws.  <u>Glowski v. Allstate
Ins. Co.</u>, 134 N.H. 196, 198 (1991).  The Restatement provides
that, where the parties have not expressly chosen which law
applies, "a contract should be governed by the law of the state
with which the contract has its most significant relationship."
<u>Guardian Angel Credit Union</u>, 2010 WL 1794713, at *5 (citing,
among other cases, <u>Ellis v. Royal Ins. Cos.</u>, 129 N.H. 326, 330
(1987)).  For tort claims, New Hampshire courts look at "five
choice-influencing considerations: (1) the predictability of
results; (2) the maintenance of reasonable orderliness and good
relationships among the States in the federal system; (3)

8

simplification of the judicial task; (4) advancement of the governmental interest of the forum; and (5) the court's preference for what it regards as the sounder rule of law." Benoit v. Test Sys., Inc., 142 N.H. 47, 52 (1997) (internal quotation marks and citation omitted).

###### A.   Counts I & II

In count I, the plaintiffs seek an accounting from all three defendants of the Silo Ridge sales made without the plaintiffs' involvement.   Count II alleges breach of contract against Millbrook only.

In their summary judgment motion, the defendants took the position that there was never a binding contract because the parties never reached a meeting of the minds, which is required under New York law.   The defendants argued that the Proposal contained a condition precedent requiring the parties to sign a separate agreement and that the condition precedent was never met.   They also argued that the lack of a binding contract is shown by the fact that the Proposal lacked essential terms, including any reference to operations, "standards of conduct termination," and indemnification.   The defendants then contended that, because the plaintiffs do not have a viable breach of

9

contract claim, the accounting claim must also fail because the second is dependent on the first under New York law.

The plaintiffs countered that the Proposal was not contingent upon the execution of another agreement, as demonstrated both by the parties' actions and by the fact that the Proposal contained all the terms that the parties considered essential.  The plaintiffs claimed that, to form a binding contract, both New York and New Hampshire law require a meeting of the minds as to the essential terms, but that under New Hampshire law, whether this occurred is a factual question to be determined by the trier of fact.  Furthermore, the plaintiffs pointed out, under New Hampshire law, the contract terms must be only reasonably certain to be enforceable.

In their motion for a determination that New York substantive law applies, the defendants raise only one conflict between New York and New Hampshire law with respect to counts I and II.  They reiterate the plaintiffs' statement that, under New Hampshire law, "[t]he question of whether a 'meeting of the minds' occurred is a factual question to be determined by the trier of fact."  <u>Glick v. Chocorua Forestlands Ltd. P'ship</u>, 157 N.H. 240, 252 (2008) (internal quotation marks and citation omitted).  The defendants suggest that this aspect of New Hampshire law is at odds with New York precedents, in which

"courts have not hesitated to summarily dispose of breach of contract claims upon the same grounds as those raised by defendant here."  Deft.'s Mot., at 3.

It is unclear what the defendants believe to be the conflict between the proposition stated in <u>Glick</u> and the three cases they cite, <u>Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.</u>, 145 F.3d 543 (2d Cir. 1998); <u>Georgiadis v. First Boston Corp.</u>, No. 90 Civ. 7672, 1993 WL 22122 (S.D.N.Y. Jan. 26, 1993); and <u>Andor Group, Inc. v. Benninghoff</u>, 631 N.Y.S.2d 79 (N.Y. App. Div. 1995).  In New Hampshire, as in New York, a trial court will dismiss a breach of contract claim before trial where there is no evidence that there was a meeting of the minds.  <u>See</u> <u>Chisholm v. Ultima Nashua Indus. Corp.</u>, 150 N.H. 141, 145 (2003) ("Before such issues [as the existence and terms of a contract, including meeting of the minds] can be submitted to the jury, however, the trial court must determine whether there is any evidence from which it could be found that there was a contract between the parties.") (internal quotation marks, citation, and alteration omitted); <u>Maloney v. Boston Dev. Corp.</u>, 98 N.H. 78, 82 (1953) (same, and referring to "a preliminary question of law for the Trial Court . . . [namely, whether] there [is] any evidence from which it could be found that there was a contract between the parties").  Thus, under New Hampshire law, a court may "summarily

11

dispose" of a breach of contract claim where there was no meeting of the minds, just as a court may do under New York law.

The defendants have failed to show the existence of a conflict of law with respect to count I or II.  The court will, therefore, apply New Hampshire law to the accounting and breach of contract claims.

####    B.    Count III: Unjust Enrichment

In their motion to dismiss, the defendants argued that count III, for unjust enrichment, should be dismissed because New York law does not allow a party who claims breach of contract to sue for unjust enrichment based on the same facts.  In their objection, the plaintiffs countered that dismissal is premature at this stage because the unjust enrichment claim is pled as an alternative to the breach of contract claim, which would not be viable if the Proposal is found unenforceable.  The plaintiffs also argued that New Hampshire law allows them to raise both claims.  The defendants responded that the plaintiffs' view of New York law is incorrect.  Thus, although neither party actually demonstrated the existence of a conflict, they appear to agree that one exists.

1.  <u>New York Law</u>

New York law provides that a claim of "unjust enrichment[]
is duplicative of . . . [a claim of] breach of contract [where]
both causes of action seek damages for events arising from the
same subject matter that is governed by an enforceable contract."
<u>Bettan v. Geico Gen. Ins. Co.</u>, 745 N.Y.S.2d 545, 546 (N.Y. App.
Div. 2002).  In order to sustain a claim of unjust enrichment, a
plaintiff must allege that the defendant "committed other wrongs
distinct from the contractual breach."  <u>Spanierman Gallery, PSP
v. Love</u>, No. 03-cv-3188-VM, 2003 WL 22480055, at *3 (S.D.N.Y.
Oct. 31, 2003).  Where, however, "there is a bona fide dispute as
to the existence of a contract, or where the contract does not
cover the dispute in issue, a plaintiff may proceed upon a theory
of quasi contract as well as contract, and will not be required
to elect his or her remedies."  <u>Zuccarini v. Ziff-Davis Media,
Inc.</u>, 762 N.Y.S.2d 621, 622 (N.Y. App. Div. 2003).

In this case, there is a dispute about whether the Proposal
is a valid and enforceable contract.  In their motion for summary
judgment, the defendants argued, inter alia, that the plaintiffs'
claim for breach of contract must fail because no contract was
ever formed.  Ferguson Aff., Exh. B, at 8.  Therefore, under New
York law, the plaintiffs' unjust enrichment claim would likely
survive.

13

### 2.   New Hampshire Law

Under New Hampshire law, "the court ordinarily cannot allow recovery under a theory of unjust enrichment where there is a valid, express contract covering the subject matter at hand." Clapp v. Goffstown Sch. Dist., 159 N.H. 206, 210-11 (2009). However, "[u]njust enrichment may be available to contracting parties where the contract was breached, rescinded, or otherwise made invalid, or where the benefit received was outside the scope of the contract." Id. at 211.  Moreover, "[p]leading in the alternative is an appropriate course to follow at this stage of the proceedings." Scott v. First Am. Title Ins. Co., No. 06-cv-286-JD, 2007 WL 135909, at *6 (D.N.H. Jan. 17, 2007) (citing Fed. R. Civ. P. 8(a)).

The analysis under New Hampshire law is quite similar to the analysis under New York law.  There is a dispute as to whether there is a valid contract, so the unjust enrichment claim would probably not be dismissed under New Hampshire law.

### 3.   Applicable Law

Regardless of whether New York or New Hampshire law were applied, the unjust enrichment claim would probably not be dismissed.  Because the outcome dictated by either state's law is

14

the same, there is no conflict of law, and New Hampshire law will
be applied to count III.

    C.   <u>Count IV: Promissory Estoppel</u>

    In their motion to dismiss, the defendants argued that count
IV, which alleges promissory estoppel or detrimental reliance,
must be dismissed because the alleged promise was not "clear and
unambiguous," as required by New York law.  The plaintiffs
objected, contending that the defendants read the complaint too
narrowly, and that the promise at issue is not just a promise to
comply with the Proposal, but rather specific promises regarding
compensation, length of employment, the duration of the contract,
and exclusivity.[5]  The plaintiffs also argued that New Hampshire
law applies, and provides that a promise's lack of clarity only

---

    [5]In their reply to the motion to dismiss, the defendants
also argued that the promises on which the defendants allegedly
relied are merely promises in the Proposal, and that therefore the
promissory estoppel claim should be dismissed because it
duplicates the breach of contract claim.  Under both New York and
New Hampshire law, "where there is 'a bona fide dispute as the
existence of a contract,' or 'where the contract does not cover
the dispute in issue,' a plaintiff may allege both a breach of
contract claim and a quasi contract promissory estoppel claim."
<u>Satellite Tracking of People, LLC v. G4S PLC</u>, No. 3:08-cv-0126,
2009 WL 2983032, at *6 (M.D. Tenn. Sept. 14, 2009) (construing
New York law and citing <u>Zuccarini</u>, 762 N.Y.S.2d at 622); <u>see also</u>
<u>Clapp</u>, 159 N.H. at 211 (New Hampshire law).  Therefore, the
defendants fail to demonstrate a conflict with respect to this
argument, and New Hampshire law will be applied.

reduces the damages available, but does not bar the claim
entirely.

    1. <u>New York Law</u>

  New York law provides that "[a] party relying upon
promissory estoppel must demonstrate that there was a clear and
unambiguous promise upon which it reasonably and detrimentally
relied." <u>Clifford R. Gray, Inc. v. LeChase Const. Servs., LLC</u>,
819 N.Y.S.2d 182, 186 (N.Y. App. Div. 2006).  The complaint
alleges that the defendants promised to "comply with their
obligations pursuant to the Agreement. . . . [s]pecifically, the
terms of compensation and the duration of the contract."  Compl.
at ¶ 33.  The complaint also alleges that Millbrook promised that
API would be Millbrook's exclusive sales and marketing agent for
one year, and that Millbrook would pay API $125,000 on signing,
$30,000 a month thereafter, a $125,000 performance bonus at
Millbrook's discretion, and commissions for sales beyond $35
million.  <u>Id.</u> at ¶ 12-13.  A promise to pay for services is clear
and unambiguous under New York law.  <u>See</u> <u>Arfa v. Zamir</u>, 869
N.Y.S.2d 390, 391 (N.Y. App. Div. 2008) (promissory estoppel
claim correctly sustained based on client's promise to pay for
legal services).  A promise of exclusivity is no less clear and

unambiguous.[6]  Therefore, if New York law were applied, the promissory estoppel claim would likely survive the motion to dismiss.

2.  <u>New Hampshire Law</u>

The defendants did not discuss whether a promise must be clear and unambiguous under New Hampshire law to support a promissory estoppel claim.  The plaintiffs pointed out that the New Hampshire Supreme Court indicated in dicta that promissory estoppel can be based on an "indefinite or unclear promise." <u>Jackson v. Morse</u>, 152 N.H. 48, 53 (2005) (explaining that damages award will usually be lower where promise is not clear or definite).  Under New Hampshire law, therefore, the defendants' argument regarding the ambiguity of the alleged promise would likely fail, because a promissory estoppel claim may proceed based on an indefinite or unclear promise, although the measure of damages is affected.

---

[6]The defendants cited two cases regarding claims of fraud and one case regarding the meaning of "materiality" in the context of the federal securities laws.  Even assuming these cases are applicable to promissory estoppel claims, they are not applicable here, where the alleged promises are not merely an opinion of the speaker, vague, tenuous, or insubstantial.

3.  Applicable Law

Although New York and New Hampshire law appear to differ with regard to the defendants' argument, the outcome is the same. Therefore, New Hampshire law will be applied to count IV.

D.  Count V: Negligent/Fraudulent Misrepresentation

The defendants also argued in their motion to dismiss that the court should apply New York law to the plaintiffs' claim for "negligent/fraudulent misrepresentation." If construed as a claim for either fraud or negligent misrepresentation, they argued, it fails both because it is merely a claim for failure to fulfill a contractual obligation, which is not actionable as a misrepresentation, and because it is based on an alleged misrepresentation of a future event, rather than on an existing fact. If construed as a claim for fraud, they contended, it fails for a further reason: it does not plead fraud with particularity, as required by Federal Rule of Civil Procedure 9(b).

The plaintiffs countered that their negligent/fraudulent misrepresentation claim, like the claims for unjust enrichment and promissory estoppel, is an alternative to the breach of contract claim and, therefore, should not be dismissed so early in the litigation. They also explained that the

18

misrepresentations at issue were not about future conduct, but
rather related to whether they would have a one-year contract and
whether they would be Millbrook's exclusive marketing agent
during the time in question, both of which were "concrete facts
established during the course of the parties' discussions."
Pls.' Obj. to Mot. to Dismiss, at 11.  With respect to Rule 9(b),
the plaintiffs argued that the complaint is sufficient when read
as a whole, because it alleges the term of the contract, the fees
to be paid, the exclusivity arrangement, and the ways in which
the defendants broke their promises, namely, ongoing marketing
without the plaintiffs and early termination.

        In their motion for a determination that New York law
applies to the plaintiffs' claims, the defendants attempt to show
the existence of a conflict by referring to their arguments for
dismissal under New York law and then stating that "[p]laintiffs
have argued, without citing New Hampshire authority, that New
Hampshire law holds otherwise."  Defts.' Mot., at 8.  The
defendants argue that if the plaintiffs are correct about New
Hampshire law, a conflict would exist.  In the section of their
objection to the motion to dismiss addressing this claim,
however, the plaintiffs did not argue that New Hampshire law,
rather than New York law, should be applied to the claim.  They
did not cite a single case construing New Hampshire law, nor did

they mention New Hampshire law or attempt to explain how New
Hampshire law differs from New York law.

After two attempts, the defendants failed to carry their
burden of showing that a conflict exists between New York and New
Hampshire law regarding the elements and limitations of a claim
for negligent or fraudulent misrepresentation.[7]  Because no
conflict has been demonstrated, New Hampshire law will be
applied.

> E.   Count VI: Intentional Interference With Contractual
>      Relations

Count VI alleges that Torres and Garofalo intentionally
interfered with the plaintiffs' contractual relations.  The
defendants argued that the claim should be dismissed because New
York law permits corporate officers to be held liable for
tortious interference only where they acted in a non-corporate
capacity or to secure a personal gain.

---

[7]Furthermore, to the extent the defendants argued that a
fraud claim should be dismissed where it alleges only a failure
to fulfill a contractual commitment, it appears that they
overlooked a portion of the New York law cited in their motion to
dismiss.  See 34-35th Corp. v. 1-10 Indus. Assocs., LLC, 768
N.Y.S.2d 644, 644 (N.Y. App. Div. 2003) (fraud claim duplicative
of breach of contract claim under New York law only if, inter
alia, "there are no damages that would not be recoverable under
the contract measure of damages").

It appears from their objection that the plaintiffs conceded that their claim would be dismissed if New York law were applied, but they argued that New Hampshire law should be applied.  Citing Hangar One, Inc. v. Davis Assocs., Inc., 121 N.H. 586, 589 (1981), they argued that corporate officers can be held personally liable where they cause the corporation to breach its contract.  According to the plaintiffs, New Hampshire does not follow the more exacting standard that New York employs to hold officers personally liable.

In their reply, the defendants argued that Hangar One is distinguishable because it involved particularly egregious behavior by a corporate officer.  The defendants maintained that public policy would not support extending Hangar One because that would defeat the liability-limiting purpose of the corporate form.

### 1.   New York Law

Under New York law, a corporate officer or director "is not personally liable to one who has contracted with the corporation on the theory of inducing a breach of contract, merely due to the fact that, while acting for the corporation, he has made decisions and taken steps that resulted in the corporation's promise being broken."  Joan Hansen & Co. v. Everlast World's

<u>Boxing Headquarters</u>, 744 N.Y.S.2d 384, 390 (N.Y. App. Div. 2002).
"Failure to plead in nonconclusory language facts establishing
all the elements of a wrongful and intentional interference in
the contractual relationship requires dismissal of the action."
<u>Id.</u> (internal quotation marks and citations omitted).  The
complaint must allege "that the acts of the defendant corporate
officers which resulted in the tortious interference with
contract either were beyond the scope of their employment or, if
not, were motivated by their personal gain, as distinguished from
gain for the corporation."  <u>Petkanas v. Kooyman</u>, 759 N.Y.S.2d 1,
2 (N.Y. App. Div. 2003).  For the latter allegation, the
defendants' acts must have been "undertaken with malice and . . .
calculated to impair the plaintiff's business for the personal
profit of the . . . defendant[s]."  <u>Id.</u> (internal quotation marks
and citation omitted).

     The complaint does not allege that Torres or Garofalo acted
outside the scope of their employment or that they caused
Millbrook to breach the Proposal for their personal gain, or that
they did so out of malice or to impair the plaintiffs' business.
Instead, it states merely that Torres and Garofalo "intentionally
and improperly interfered with [the contractual relationship
between Millbrook and API] when they unilaterally made the
decision to terminate the Agreement."  Compl. at ¶ 42.  The

                                22

complaint does not meet the "enhanced pleading standard" that New York law applies to claims of intentional interference with contractual relations.  <u>Petkanas</u>, 759 N.Y.S.2d at 2 (internal quotation marks and citation omitted).  Therefore, if New York law were applied, count VI would probably be dismissed for failure to state a claim upon which relief can be granted.

      2.  <u>New Hampshire Law</u>

In New Hampshire, a plaintiff need only allege sufficient facts to show that the defendant "induce[d] or otherwise purposely cause[d] a third person not to perform a contract with another."  <u>Griswold v. Heat Inc.</u>, 108 N.H. 119, 124 (1967) (internal quotation marks, alternations, and citations omitted).  Doing so "establishe[s] a prima facie case for the plaintiff."  <u>Id.</u> at 125.  Whether the defendant can avoid liability on the ground that he was acting as a corporate officer is treated as an issue of privilege.  <u>See id.</u>; <u>cf.</u> <u>Baker v. Dennis Brown Realty, Inc.</u>, 121 N.H. 640, 644 (1981) ("An action for interference with contractual relations cannot succeed where the defendant's actions were justified (or privileged) under the circumstances.") (internal quotation marks, citation, and alteration omitted).  The existence of such a privilege is an affirmative defense,

which the defendants bear the burden of proving.  <u>Griswold</u>, 108

N.H. at 125; <u>see also</u> <u>Baker</u>, 121 N.H. at 644.

Under New Hampshire law, the defendants' argument for

dismissal of count VI would probably not succeed.  Although their

positions as corporate officers and their motive in allegedly

causing Millbrook to breach the Proposal might ultimately relieve

Torres and Garofalo from liability on this claim, the plaintiffs

would likely be permitted to proceed with the claim until the

affirmative defense is raised and proved.  It appears that count

VI does not fail to state a claim upon which relief can be

granted under New Hampshire law.

### 3.   <u>Applicable Law</u>

Under New York law, count VI would probably be dismissed,

but under New Hampshire law, it likely would not.  Because there

is a conflict in the outcome, the court must decide which state's

law to apply.  Count VI is a claim sounding in tort, so the five-

factor test discussed above applies, as both parties agree.

### a.   <u>Predictability of Results</u>

The first consideration, predictability of results, "relates

primarily to consensual transactions, in which it is important

that parties be able to know in advance what law will govern a

transaction so that they can plan it accordingly." Lessard v. Clark, 143 N.H. 555, 556-57 (1999) (internal quotation marks and citation omitted). "Reliance upon a predictable choice of law protects the justifiable expectations of the parties, and assures uniformity of decision regardless of forum." Ferren v. Gen'l Motors Corp., Delco Battery Div., 137 N.H. 423, 426 (1993) (internal quotation marks, citation, and alterations omitted).

The defendants argue that the parties expected that their business interactions would be governed by New York law because the Proposal called for performance in New York and dealt with the sale of interests in Silo Ridge, which is in New York; because Condodemetraky became an employee of Millbrook, a New York company; and because Condodemetraky maintained an office in New York and paid New York taxes.

In support of the application of New Hampshire law, the plaintiffs state that the defendants sought a contract with a New Hampshire corporation; that the defendants knew that Condodemetraky would work mostly in New Hampshire, and he in fact did so; that the defendants hired a New Hampshire resident to work from his New Hampshire office; and that the defendants had an opportunity to demand that the Proposal include a provision requiring the application of New York law, but that they did not do so.

Although there are some discrepancies in the parties'
averments, there is no dispute that the Proposal deals with the
marketing and sales of interests in Silo Ridge, which is in New
York.  The Proposal called for API and Condodemetraky to perform
a number of functions in New York, including inviting potential
investors to join them on a tour of Silo Ridge, presenting "Road
Show[s] . . . at designated locations within the New York Metro
area or at Silo Ridge," and "rais[ing] awareness of Millbrook
Ventures and Silo Ridge in the New York metro area."  Compl.,
Exh. 1 at 2-3.  While it is true that the defendants knowingly
did business with a New Hampshire resident and a New Hampshire
corporation, it is also true that the plaintiffs knowingly did
business with a New York company and individuals who worked in
New York.  Similarly, even if Condodemetraky worked mostly from
his New Hampshire office, he also had an office in New York, and
he was required, under the Proposal, to spend time at Silo Ridge
and at other venues in New York.  Given the strong ties between
the Proposal and the state of New York, it was more reasonable
for the parties to assume that New York law, rather than New
Hampshire law, would apply to their consensual transactions.

        b.    Maintenance of Orderliness & Good Relations
        "[T]he maintenance of reasonable orderliness and good

26

relationship among the States in our federal system[] requires no
more than that a court apply the law of no state which does not
have substantial connection with the total facts and with the
particular issue being litigated." Lessard, 143 N.H. at 557
(internal quotation marks and citation omitted). Both New York
and New Hampshire had a substantial connection with the facts of
this case and the issue of whether Torres and Garofalo
intentionally interfered with the plaintiffs' contractual
relations. The plaintiffs transacted with a New York company and
individuals who worked in New York, the transaction dealt with a
development project located in New York, and any alleged
misconduct of Torres and Garofalo occurred in New York, or at
least not in New Hampshire. On the other hand, the plaintiffs
were a New Hampshire resident and a New Hampshire corporation,
and they performed at least some of the work for the defendants
in New Hampshire. For the reasons discussed above, New York's
connection to the facts is slightly more substantial, although
either state is sufficiently connected to the facts to satisfy
this prong. See LaBounty v. Am. Ins. Co., 122 N.H. 738, 743
(1982) ("We find that Massachusetts, Maine and New Hampshire are
all sufficiently connected with the facts and legal issues to
warrant further scrutiny.")

27

c.   <u>Simplification of Judicial Task</u>

The defendants argue that applying New York law will simplify the judicial task because New York law will govern the remaining claims in the case.  The plaintiffs point out that counts VII and VIII are governed by New Hampshire law, and that it is simpler to apply the law of one state than to apply the law of different states to different claims.  Both parties, therefore, agree that it is easier for the court to apply one state's law to all the claims.  There appears to be some merit in this proposition.[8]  <u>See</u> <u>Stonyfield Farm, Inc. v. Agro-Farma, Inc.</u>, No. 08-cv-488-JL, 2009 WL 3255218, at *7 (D.N.H. Oct. 7, 2009).

As discussed above, New Hampshire law will apply to the remainder of the claims.  Thus, it would be simpler to apply New

_____

[8] It is not clear, however, that New Hampshire courts would consider which law is applied to other counts of a complaint in determining judicial simplicity.  <u>See</u> <u>Dunlap v. Aulson Corp.</u>, 90 F.R.D. 647, 651 (D.N.H. 1981) ("The third consideration, simplification of the judicial task, addresses procedural rules, not here applicable under uniform Federal Rules of Civil Procedure, and the question of whether it is easier for a Court to apply its own substantive law.") (citing <u>Clark v. Clark</u>, 107 N.H. 351, 354 (1966)).  <u>But see</u> <u>Stonyfield Farm, Inc. v. Agro-Farma, Inc.</u>, No. 08-cv-488-JL, 2009 WL 3255218, at *7 (D.N.H. Oct. 7, 2009); <u>Guardian Angel Credit Union</u>, 2010 WL 1794713, at *8 n.10 (noting that, in context of motion to certify class, having one court adjudicate all claims as a class action was simpler than multiple courts adjudicating separately).

Hampshire law to count VI, as well.  "But simplification of the judicial task is not the whole end of law, and opposing considerations may outweigh it."  <u>Clark</u>, 107 N.H. at 354.

d.   <u>Governmental Interest of Forum</u>

The fourth consideration is the advancement by the court of New Hampshire's governmental interests rather than those of another state.  The defendants argue that this factor bears no weight here because New Hampshire has no strong policy that New York's laws would not achieve.  The plaintiffs counter that New Hampshire has an interest in providing a forum to redress the injuries of its citizens, and the application of New York law would hinder this interest because, under New York law, count VI would be dismissed.

New Hampshire has an interest in regulating conduct within the state and protecting its citizens.  <u>Cf.</u> <u>Nowak v. Tak How Invs., Ltd.</u>, 94 F.3d 708, 718 (1st Cir. 1996) (determining whether New Hampshire has sufficient interest to justify exercise of personal jurisdiction); <u>Gagne v. Berry</u>, 112 N.H. 125, 128 (1972) (in determining law to apply to motor vehicle accident case, noting that New Hampshire "has a legitimate interest in regulating the conduct of motorists within its territory" and application of Massachusetts law, under which suit would be

dismissed, "would defeat the deterrent effect of our negligence laws"). On the other hand, "[g]overnmental interest . . . is not necessarily synonymous with domestic law." <u>Clark</u>, 107 N.H. at 354. "A state often has no particularly strong policy in reference to local rules of law which happen through the vagaries of legislative or judicial law-making to differ from a neighbor's view." <u>Id.</u> at 354-55. In most cases, "the only real governmental interest that the forum has is in the fair and efficient administration of justice." <u>Id.</u> at 355.

The plaintiffs have not satisfied the court that New Hampshire has any strong policy interest that would support the application of New Hampshire law, and there is no reason why the application of either state's law would be more fair or efficient than the other. This factor does not weigh in favor of either New Hampshire or New York's law.

### e.   Sounder Rule of Law

Citing <u>Stonyfield Farm</u>, 2009 WL 3255218, at *8, the defendants state that the court's preference for what it deems the sounder rule of law is generally a tie-breaker in close cases. The defendants argue that this is not a close case, and that therefore there is no need for such a tie-breaker. The plaintiffs assert the same argument as with the previous factor,

that it is a sounder rule of law to allow the plaintiffs to
pursue count VI as an additional avenue of redress rather than
dismiss it under New York law.  The plaintiffs cite no cases in
support of their argument.

While it may be true that there is value in allowing a party
to allege various claims in the alternative, there may also be
value in the judicial economy achieved when redundant complaints
are narrowed at the outset of litigation, rather than after
months or years of discovery and motion practice.  Without
further development, the plaintiffs have not adequately shown
that New Hampshire's rule of law is the sounder one in this
instance.  Moreover, the remainder of the factors point to the
application of New York law, and a tie-breaker is not necessary.

In sum, the first of the five factors weighs in favor of
applying the law of New York, as does the second factor to a
small extent.  The third factor somewhat favors the application
of New Hampshire law, while the fourth and fifth factors do not
favor either state's law.  Therefore, the court will apply the
law of New York to count VI.


Conclusion

For the foregoing reasons, the defendants' motion for a
determination that New York law applies to the adjudication of

31

plaintiffs' claims (doc. no. 33) is denied with respect to counts I, II, III, IV, V, VII, and VIII, and is granted with respect to count VI.  New Hampshire substantive law will apply to the adjudication of counts I, II, III, IV, V, VII, and VIII.  New York substantive law will apply to the adjudication of count VI.

To the extent the defendants wish to renew their motions to dismiss and for summary judgment, the motions shall be filed by **September 24, 2010**.


SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

August 9, 2010

cc:  Philip R. Braley, Esquire
      Christopher M. Ferguson, Esquire
      Bryan K. Gould, Esquire
      Arnold Rosenblatt, Esquire

32